## Case No. 11,668.

### REID et ux. v. KERFOOT et al.

### [Chase, 349.] [1]

Circuit Court, D. Virginia. May Term, 1869.

COURTS—FEDERAL JURISDICTION— SUIT PENDING IN STATE COURT.

A suit being in progress in a state court for the settlement of an estate, two of the legatees being non-resident, but having knowledge of this suit, and having been made parties by order of publication, file their bill in the United States circuit court to have the estate administered. *Held*, the latter court has no jurisdiction.

Alfred Reid and wife, citizens of New Orleans, and J. A. Lowers, a citizen of Havana, Cuba, filed their bill in the circuit court of the United States for the district of Virginia, alleging that Franklin J. Kerfoot and Province McCormick, who had been left executors of the will of William Lowers, had wasted the assets in various ways specified in the bill, and praying that they might be decreed to account. They also averred that they were legatees under the will. The executors answered, making defense to the charges of devastavit, and at the same time pleaded that a suit was at the time pending in the circuit court of the state of Virginia for Clarke county, for the settlement of the estate to which all persons interested were parties, the plaintiffs having been made so by an order of publication under the laws of the state; and showing that the plaintiffs had personal knowledge that the aforesaid suit was, at the time they filed their bill in this court, pending. That the plaintiffs could obtain all the relief they were entitled to in that cause. They, therefore, prayed that the plaintiffs' bill might be dismissed for want of jurisdiction in this court, the state court having previously taken jurisdiction of the subject.

H. G. Pond and H. H. Wells, for complainants.

Reid and wife are citizens of Louisiana, all of the defendants excepting are citizens of Virginia. William Lowers died on December 30, 1862, seized of an estate, real and personal, valued at seventy-five thousand dollars, which by will he bequeathed in certain proportions to his wife for her life and to his children, ten in all. An objection is made that this court has no jurisdiction of this cause, because of the pendency of a suit in the circuit court of Clarke county, for the probate of this will and for its establishment, or in their own language a "suit to set up the will, to have it admitted

to probate in the proper forms and qualify as executors." It is said that personal service was made upon the legatees resident of Virginia, and by order of publication against absent defendants. The executors in this bill also ask that all accounts necessary or proper, or asked, or required by the parties, might be taken. We reply that the pendency of that suit is not a bar to this one, nor does it in any wise interfere with the rights which the complainants as citizens of another state have to prosecute their actions in the federal courts. In Buck v. Colbath, 3 Wall. [70 U. S.] 335, the history and growth of the federal jurisdiction is traced—at page 341, the general ground on which most of the cases rest, is defined, to wit, "when property has been seized by an officer of the court, on its process, the property is to be considered in the custody of the court, and no other court can interfere with it." But it is only when the property is in the possession of the court, that the court is bound to protect it against the process of other courts; whenever the litigation is ended, other courts are at liberty to deal with it according to the rights of the parties. From this case, and the principles involved, it was said that the court first obtaining jurisdiction had a right to decide every issue arising in the progress of the case. It is undoubtedly upon this last proposition that the defendants alone can undertake to sustain their objections to the jurisdiction. The cause, however, is subject to a very necessary as well as just limitation, and is pointed out by the supreme court at page 345. It is to be confined to the parties upon the court, or who may, if they wish, come before it and have a hearing on the issue to be decided. It is not true that a court having jurisdiction of the subject-matter and of the parties, thereby excludes all other courts from adjudicating upon other matters, having a very close connection with those before the first court; and in some instances requiring a decision of the same questions exactly, we must have regard to the nature of the remedies, the character of the relief sought, and the identity of the parties; see pages 345, 346. Applying these principles to this case, we ask, is the relief sought the same? The bill in the state court was a bill simply for probate of a will. This is a proceeding to charge the defendants with property received by them, and disposed of illegally before any probate of the will was had. It seeks to charge them personally for a wrongful conversion and misappropriation of the property of the complainants. Is it not clear that the remedy and the relief sought is not only not the same, but if these complainants had made themselves parties to the suit now pending in the state court, they could not in that suit have the relief prayed in that bill? It is doubtful whether the proceeding in the state court can be said to be a suit at all or not; it is rather an an-

---

[1] [Reported by Bradley T. Johnson, Esq., and here reprinted by permission.]

cillary proceeding, and is like that in the case of Shipley v. Bacon, 10 How. [51 U. S.] 56. In that case the complainant filed his bill against Bacon and others assignees of the Bank of the United States, alleging himself to be a creditor, and a judgment was shown, recovered in the district court for the city of Philadelphia, that upon application the creditors had failed to pay his claims. He then filed his bill in the circuit court of the United States. The defendant pleaded to the jurisdiction of the federal courts, averring the pendency of the suit in the Pennsylvania courts, and that they had ample power to enforce the trusts in regard to the rights of the complainants.

The supreme court states the question to be, "Can the proceedings stated in the plea be considered to be a suit?" The Pennsylvania act required the assignment to be recorded in thirty days, schedules and sworn inventories of the property to be filed. It is made the duty of the court there to appoint appraisers, and then the assignees shall return an inventory and appraisement, and to give bonds to the commonwealth that they will faithfully execute the trust. It was then made the duty of the court on application of any person interested, to issue a citation to the trustees to appear and exhibit their accounts, and the condition of the trust. The court was authorized also to require parties to come in, and to make service by publication. The court says, "If the plea in this case had been perfect, it would not follow that the complainant could not invoke the jurisdiction of the federal courts. He being a non-resident has his option to bring his case in the circuit court of the United States, unless he has submitted to, or been made a party to the special jurisdiction." To establish his claim the complainant has the right to sue in the circuit court which was established chiefly for the benefit of non-residents, not that the claim should be established on any novel principles of law or equity, but that his rights might be investigated free from any supposed local prejudice or any unconstitutional legislation. On the most liberal constitution, favorable to the exercise of the special jurisdiction, the rights of the plaintiff in this respect could not, against his consent, be drawn into it. The court held that the proceedings in Pennsylvania were not a suit in the sense that the word is used when we speak of the pendency of a suit being a bar to another action. In what essential particular do the proceedings had in Clarke county, differ from those referred to in the case last cited. The complainants did not make themselves parties nor submit to the jurisdiction, nor did the order of publication have any such effect, because, by the 13th section of the act which authorized this publication (see Code 1860, p. 708), it is expressly provided that no such decree shall be final against any such non-resident, until the expiration of five years

after the same is entered. It enacts "that a defendant who was not served with personal process may within five years from the date, petition to have the case re-heard, and may plead, or answer, and have any injustice in the proceedings corrected." Again the bill expressly charges that the acts of the defendant were fraudulent and collusive, and the supreme court in the case last cited say. "We suppose that it could not be contended that fraud or collusion might not be shown to avoid the proceedings before any tribunal having jurisdiction." Can it be doubted that this well recognized ground of equitable jurisdiction should be exercised in this cause? Could a stronger case of collusion be alleged than that set forth in this bill? The defendant legatees and executors have used the property, dealt with and treated it as their own, and divided it among themselves to the exclusion of the complainants; could there possibly be a worse collusion than that of exercising a discretion given by the order of the court, and investing the property of this complainant in Confederate bonds, instead of Virginia state bonds? The latter must be good, no matter what the result might be; the value of the first depended upon the most remote contingencies. The final success of the Confederacy, and its power after success was achieved to redeem the untold millions of its paper promises, being doubtful, would any honest trustee, dealing fairly and without collusion, invest in the doubtful security when the opportunity was allowed to invest in one without doubt? Even the court did not direct such an investment, but left the election to the executors; can anyone doubt that there was a collusion to use the property of the complainants to sustain the failing Confederacy? All these questions of jurisdiction, however, have been fully considered and decided by this court in the cases of Miller v. Miller, the Bank of the Valley in Virginia [unreported], and the cases so familiar to the court, as to make further argument unnecessary.

There is, however, one other consideration which is entirely conclusive both on principle and authority. It is this: The several acts of congress providing for the removal of causes from the state to the federal courts authorize this complainant to remove the cause from the circuit court of Clarke county to this court; on filing his application for the removal, the circuit court of the United States becomes at once, not only possessed of the whole case, but the state court is thereby perpetually inhibited from any further proceedings in it. Why then should this court compel parties to the circuitous method of dismissing this bill, then going to the state courts and removing the cause pending there to this tribunal? Such a course would be too circuitous to be tolerated. The wiser and more reasonable course would be, not only to sustain this jurisdiction, but to hold that even if the court would not as an inde-

pendent question have jurisdiction, the acts authorizing removal, by their own vigor. vested the jurisdiction, provided only, that the citizenship of the parties is such as taking them within the general jurisdiction clauses of the acts of congress, and such we understand was the decision of this court, the chief justice presiding in a cause determined at the May term, 1868. In the case of Riggs v. Johnson, 6 Wall. [73 U. S.] 169, decided at the December term, 1867, a very thorough and exhaustive review is found of the whole question of federal jurisdiction, from which one great fact is plainly deducible, to wit: That whenever the privilege is granted to the citizen to enforce any right in the federal court, that court has the power by appropriate remedy, to give full, perfect and adequate relief; and that no state court can by any proceeding in any wise impair this right; that even the perpetual injunction issued by such a tribunal is utterly powerless and affords no protection. Such is also the manifest spirit and general scope of the laws providing for removal of causes, and is clearly evidenced by the amendments made thereto from time to time. The general principle that allows one court having jurisdiction of a cause to decide all questions that arise in it, stood as an insurmountable barrier against the right of a citizen of another state to litigate his causes in the federal tribunals. But congress stretches out its hands, in a further execution of the dormant powers of jurisdiction given by the constitution, seizes the whole cause, removes it and all the parties to the federal court, and prohibits the parties from litigating their causes in any other tribunals. We submit that this court has undoubted jurisdiction, and neither the answer, demurrer, nor plea of the defendant, offers any valid objection or defense to the relief sought by the complainant.

Ould & Carrington, for defendants.

This suit is not matured for a hearing. It is brought against the executors of William Gowers, deceased, and also against all the legatees of Gowers. Process has been executed only on the executors. The suit is at rules as to all the other defendants. These other defendants are necessary parties, and no step can be taken in the cause until they are before the court. We do not suppose that this point is one which admits of argument. The bill charges that the will devises valuable lands in which all these legatees are equally interested with the plaintiffs. The case of Barney v. Baltimore City, 6 Wall. [73 U. S.] 280, is a case in point. In that case, the bill was dismissed, because all parties interested in partition of lands, which was sought by the plaintiffs, were not before the court. But, on an inspection of the joint interest of these legatees on the lands, they* are necessary parties. Their interest in the

balances sought to be recovered of the executors makes them necessary parties. See Story, Eq. Pl. § 89, and cases there cited. It is not alleged that these parties can not be brought before the court. On the contrary, the bill alleges their residence in Virginia. The plaintiffs are now proceeding to mature their case against these defendants, and have sued out subpoenas. Until they are executed, and the cause set for hearing at rules as to them, no proceeding in the cause can be had, and any further argument at this time seems to be premature.

We proceed with the argument, only because the plaintiffs' counsel insist on now submitting the case, and we protest against any decree at this time. We do not propose to argue the several other questions alluded to in the brief for the plaintiffs, but to confine ourselves to the question of jurisdiction alone. It seems to be a concession, that if this court entertains jurisdiction, it will decree an account. When that account is taken the other questions referred to will be considered. We maintain, that full and complete jurisdiction of all the matters set forth in the bill has been taken by the circuit court of Clarke county, that this jurisdiction has been taken as to all parties interested including the plaintiffs, that the jurisdiction of the circuit court of Clarke county was concurrent as to these matters with the jurisdiction of this court, and that it is exclusive from the fact that it first attached. It will not be disputed that the circuit court of Clarke county has jurisdiction of the matter of settlement of the percentage of fiduciaries and the division of lands in which legatees are jointly interested. If any question arises on this point, it must be on the ground, first, that the proceeding in Clarke county is not a suit, or secondly, that the plaintiffs are not parties to the suit.

The first ground is taken in the plaintiff's brief. It is rather hinted at than plainly taken. The intimation thrown out is, that it was a proceeding instituted to establish the will, and not a suit for the settlement of the accounts and for a division. The records very plainly show what the proceeding is. It is not a motion, but a regular suit in chancery. The executors are parties plaintiff, and all the legatees are parties defendant. All these defendants are regularly proceeded against, and brought before the court, and the cause set for hearing as to all. The court has taken jurisdiction of the matters in the bill as to plaintiffs, and as to all the defendants. The matters in that bill are as follows: The plaintiffs in the bill in Clarke county court, allege the death of Gowers, the existence of a last will at his death, the destruction of the instrument by fire, the fact that the plaintiffs were named as executors, that they had taken possession of the property and had partially administered it, and they pray that all the legatees be made parties, that the will be established, that their

accounts be settled, and distribution made. It is perfectly clear and indisputable that the court had jurisdiction of all" these matters, and equally so that these matters might be put in suit by any party interested, by the executors as well as the legatees. So soon as the suit is brought, it is one which can not be dismissed without the consent of the defendants, and is one which will be proceeded in at their instance. Every account asked for in the suit in this court, and all relief here asked, can be had in the suit in Clarke county. Then it seems that if the court of Clarke county has not taken jurisdiction in full of all these matters, and as to all these parties, it must be because the plaintiffs, Reid and wife, and John A. Gowers are non-residents, have not been served with process, and are not parties to the suit. We maintain that they are parties to the suit in Clarke county. They have been proceeded against by order of publication which has been duly executed. It is certainly true that this proceeding is sanctioned by the laws of Virginia. It is expressly provided by law, that in such case as this, parties interested may be proceeded against by publication, and when they have been so proceeded against, the court may proceed with the cause as though personal service of process had been made. Code Va. p. 707. The provisions of the Code of Virginia, alluded to by plaintiff's counsel (Id. c. 170, § 13), are enacted for the security or protection of the absent defendants. They do not go to the extent of impairing the judgment or decree, but simply provide for a re-hearing on cause shown within five years. It is not provided that the decree may not be executed in five years, but that on the application of the defendant it may be re-heard within four years. The decree, however, is to be executed. It has all the form and effect of other decrees against home defendants. It carries with it the same lien. It may be enforced by the same writs of execution. It is final and conclusive until it is set aside. It can no more be said to be wanting in finality than any decree or judgment which is liable to be appealed from. There can be no question about this, for language of the law is (page 708, c. 170, § 12, of the Code): "When such order shall have been published and posted, if the defendants against whom it is entered, or the unknown parties, shall not appear within one month after such publication is completed, the case may be tried or heard as to them." Then it is certain, that so far as the laws of Virginia are concerned, these plaintiffs are now parties to the suit in Clarke county. By what law is it to be determined whether they are properly before the court? It is a court organized under the laws of Virginia, and those laws must prescribe the mode of service of process. In some cases the same law makes delivery of process to a member of the family of the defendant equivalent to service of process on him. In other cases the

officer may leave a copy of process at the place of business of the party. As to all this question of service of process, which must be to some extent arbitrary, the law of the state must govern. We do most earnestly contend that these plaintiffs are actually, and are properly and legally parties to the suit in Clarke county, Virginia, and that the jurisdiction fully attached as to them.

If the jurisdiction has attached, it is exclusive. See Buck v. Colbath, 3 Wall. [70 U. S.] 337; Shipley v. Bacon, 10 How. [51 U. S.] 56; Riggs v. Johnson Co., 6 Wall. [73 U. S.] 166. The last case is cited by plaintiff's counsel. In this the question of jurisdiction was raised and depended on the following facts: Judgment had been obtained by Riggs against Johnson county [unreported] in the circuit court of the United States, execution sued out and returned nulla bona. A mandamus was sued out against the supervisors of the county to compel the assessment of a tax sufficient to pay the amount of the judgment. Objection was made that a suit had been brought in a state court against the supervisors to enjoin the levy of any tax to pay the bonds on which the judgment of the United States circuit court had been rendered, and this injunction had been perpetuated. The supreme court decided that the jurisdiction of the circuit court of the United States attached when the original suit was brought on the bonds, that the jurisdiction was not exhausted by the rendition of judgment, but that it continued until the judgment was satisfied. That under this jurisdiction the circuit court of the United States could proceed to enforce payment of the judgment by any process, including the mandamus under consideration, and that the injunction from the state court, obtained as it was after the original suit in the United States court was instituted, could not interfere with the jurisdiction of the United States court which had thus previously attached. The citation of this case is unfortunate for the plaintiffs, for if it proves anything, so far as this case is concerned, it proves that the court will inquire which jurisdiction first attached, and will give exclusive jurisdiction to that of older date.

We maintain that the jurisdiction of the circuit court of Clarke county is exclusive, on the additional ground that the proceedings in that court have become virtually and in fact proceedings in rem, and that the court through its officers has possession of the res. If this be so, all the authorities concur in denouncing any interference with the jurisdiction. That it is so, the record abundantly shows. The will gives the executors full power to sell the lands and all other property. The will was established by the decree of May 17, 1866, and by the decree of May 18, 1866, a commissioner of the court was directed to settle from time to time the percentage of the executors. The executors

sold the lands and reported the sale to the commissioner, and the commissioner proceeds to take charge of these proceeds and to decree their proper distribution. Again, the decree of October 19, 1866, directs the executors to collect and report the proceeds of these sales, and further decrees the sale of the Southern bank notes on hand. This is exactly such possession of the res by the court as if it had appointed its commissioner to take the property and sell it. That such possession can not be divested by another court, see Freeman v. Howe, 24 How. [65 U. S.] 450; Taylor v. Carryl, 20 How. [61 U. S.] 583; Buck v. Colbath, 3 Wall. [70 U. S.] 337. In the last case, at page 345, the judge pronouncing the opinion of the court, is very full, and very decided, in announcing the principle. Note the fact, that he applies it to "parties before the court, or who may, if they wish to do so, come before the court, and have a hearing on the issue so to be decided." Even if these plaintiffs are not parties to the suit in Clarke county, they certainly may, if they wish to do so, come before that court. We refer to 1 Greenl. Ev. §§ 541–543 inclusive, and the cases there cited, for a full exposition of the law respecting the force and validity of judgments and decrees in rem. From these views we deduce the conclusion, that so far as the property involved in this suit is concerned, the jurisdiction of the court in Clarke county is fully attached, and that this jurisdiction is wholly independent of all questions of residence of the parties.

The plaintiffs' counsel argues that congress has given full privilege to the plaintiffs to remove the suit from the circuit court of Clarke county to this court. They ask then, —Why put the plaintiffs to this circuitous remedy? Why not allow this suit to proceed, instead of forcing them to dismiss it, and then bring up the suit from the state court? We answer that it is against the first principles of the law to allow two suits to be progressing at the same time with the same object. To avoid this, congress provided for the removal of such cases as it chose to have tried in the federal courts. Congress did not provide that a suit for the same matter might be brought in the federal court, when one was pending in the state court. It gives only the privilege of removal, defining the terms on which the removal is to be made. It is true that the constitution provides for the jurisdiction by the federal court of cases between citizens of different states. But it is equally true that the same constitution recognizes the state tribunals, and respects their jurisdiction. Every principle for which we contend is consonant with the constitution, and presents no conflict with the right claimed by the plaintiffs. If the plaintiffs had brought their suit before the jurisdiction of the state court attached, no objection could have been urged. Congress provides for such cases by giving the right of removal.

When this right is sought to be exercised, it must be prosecuted as the statute directs, and the plaintiffs must bring themselves within its ruling. If congress, or the constitution had intended to ignore the right of the state courts to take jurisdiction of cases against residents of other states, there would have been a prohibition to such jurisdiction. On the contrary, such jurisdiction is actually recognized, by the provisions of the laws for the removal of causes, which put the party seeking their benefits under terms requiring them to come within certain conditions.

For these reasons we respectfully contend that the bill of the plaintiffs should be dismissed. The facts on which we rely are fully set forth by the pleadings. Our defense is made in the demurrer which is filed with the answer, in the plea to the jurisdiction, and again in the answer, and the relief sought may properly be extended on the issue joined on any one of the three.

BY THE COURT (CHASE, Circuit Justice. presiding). The demurrer and plea are sustained, and the bill must be dismissed.